**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,   :
                                                    :
                  Plaintiff,                   :
                                                    :
         v.                                       :        Case No. 13-cr-20371
                                                    :
DOREEN HENDRICKSON,           :
                                                    :
                  Defendant.                 :

## __MOTION TO DISMISS__

Doreen Hendrickson Moves this Honorable Court to dismiss the indictment charging her with one count of criminal contempt of court. Mrs. Hendrickson believes that the circumstances and particulars involved in this charge will shock the conscience of this Honorable Court. The courts involved in the underlying case have badly misapprehended the facts and the law and have issued or upheld orders which are plainly violative of Mrs. Hendrickson's speech rights and right to due process, are contrary to statute and are issued without jurisdiction, as well as being impossible to comply with in any event. As will be made clear by the accompanying brief Mrs. Hendrickson is not in violation of any lawful order in regard to her tax documents. The orders involved in these charges should be considered void and of no force and effect, and the charges against Mrs. Hendrickson should be DISMISSED with PREJUDICE.

# Index of Authorities

**Cases:**

*Aarti Hospitality, LLC v. City of Grove City*, 2009 U.S. App LEXIS 20883 (6th Cir. 2009).......10

*Allen v. Wright*, 468 US 737 (1984)....................................................................................12

*Baxter v. Palmigiano*, 425 U.S. 308 (1976).........................................................................13

*Blatt v. United States*, 830 F. Supp 882 (W.D.N.C.1993), aff'd, 34 F.3d 252 (4th Cir. 1994).....10

*Escobedo v. Illinois*, 378 U.S. 478 (1964)............................................................................8

*First Unitarian Church v. Los Angeles,* 357 U.S. 545 (1958)....................................................7, 11

*Hinck v. United States*, 550 U.S. 501 (2007).........................................................................10

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).............................9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...............................................................12

*Rochin v. California,* 342 U. S. 165 (1952)............................................................................14

*Rogers v. Richmond*, 365 U.S. 534 (1961).............................................................................14

*United States v. Lacy*, 658 F.2d 396 (5th Cir. 1981)..............................................................12

*Wooley v. Maynard*, 430 U.S. 705 (1977)..............................................................................11

**Statutes:**

Article 1, Section 2, Clause 3 of the United States Constitution.......................................................5

Article 1, Section 9 Clause 4 of the United States Constitution.......................................................5

Fifth Amendment of the United States Constitution.............................................................2, 6, 8

First Amendment of the United States Constitution.........................................................2, 6, 7, 8

18 U.S.C. § 401(3)......................................................................................................................1

18 U.S.C. § 1621.......................................................................................................................13

18 U.S.C. § 1622.......................................................................................................................13

26 U.S.C. § 6011(a)...............................................................................13

26 USC § 6020(b)...............................................................2, 8, 9, 10, 12

26 USC § 7402(a)......................................................................2, 8, 9

**Additional Authorities:**

Department of the Treasury, Internal Revenue Service, Office of Chief Counsel, Memorandum for Ogden Service Center, Number: 200127045, 7/6/2001...........................................15

## Contents:

**Statement of the Issues**.................................................................................1

**Controlling Authorities**...............................................................................2

**Background and Statement of Facts**..............................................................2

**Argument**

A. Mrs. Hendrickson did NOT defy the order actually given in making her testimony concerning 2008, regardless of its validity.................................................................4

B. Orders seeking to dictate or otherwise control Mrs. Hendrickson's testimony are inherently and dangerously unlawful, and violate the US Constitution's First and Fifth Amendments..........6

C. The injunctive orders seeking to control Mrs. Hendrickson's testimony are not authorized by 26 U.S.C. § 7402(a), and the District Court therefore lacked jurisdiction to issue or enforce them......................................................................................8

D. The orders Mrs. Hendrickson is accused of violating were issued without jurisdiction due to the government's lack of standing, and are therefore invalid.......................................11

E. An order to testify falsely is an order to commit a crime, as well as being itself a crime, and thus is unlawful and unenforceable...................................................................13

F. The orders given are invalid due to being impossible to comply with, and therefore invalid and unenforceable......................................................................................14

**Conclusion**.............................................................................................16

**Prayer**...................................................................................................18

## Brief in Support of Motion to Dismiss

### Statement of the Issues

Defendant Doreen Hendrickson has been charged under 18 U.S.C. § 401(3) with one count alleging her willful failure to comply with a lawful order. The order in question was issued in May of 2007, by Judge Nancy Edmunds, who commanded Mrs. Hendrickson to swear that she believes testimonial declarations dictated by the government. Mrs. Hendrickson was ordered to treat this dictated testimony as if it were her own genuine and freely-made testimony, and to accept any and all legal consequences for it, as well. She was threatened with incarceration if she chose not to create this false "testimony".

The "testimony" to which Mrs. Hendrickson was ordered to falsely swear to be her own comprises declarations on income tax returns that she believes her earnings and those of her husband during the years 2002 and 2003 are the product of activities properly and legally subject to the federal income tax. This dictated "testimony" contradicts her actual and already long-since freely-made testimony as to what she really believes concerning these matters.

It is important to emphasize that Mrs. Hendrickson was not ordered *to testify*. Mrs. Hendrickson was ordered *to impeach her own freely-made testimony, replace it with words commanded by the state, and affix her signature to those words falsely declaring them to be her own*. Mrs. Hendrickson was also enjoined from testifying freely and sincerely on tax-related instruments in the future.

1

## Controlling Authority

The primary controlling authorities involved in this case are the First and Fifth Articles of Amendment to the United States Constitution guaranteeing freedom of speech and conscience and due process of law, and 26 U.S.C. § 7402(a) (controlling federal court jurisdiction to issue injunctions) and 26 U.S.C. § 6020(b) (mandating government production of returns when a return is deemed required, and that a filed return is incorrect, and specifying that such government-produced returns are a complete statutory remedy for any government interest in a return).

## Background and Statement of Facts

Judge Edmunds issued the orders seeking to control and dictate Doreen Hendrickson's testimony without ever having met Mrs. Hendrickson. Judge Edmunds had no personal knowledge of the facts concerning the Hendricksons' earnings or activities; she had seen no evidence contradicting Mrs. Hendrickson's freely-made testimony; and had not had so much as a single hearing in the matter before issuing the orders at the government's request.

At the same time, and again at the government's request, Judge Edmunds enjoined Mrs. Hendrickson from testifying freely on future tax return affidavits by specifying certain beliefs for which Mrs. Hendrickson would be punished should their influence somehow be allegedly detected in her testimony. The orders made to Mrs. Hendrickson thus introduce into America for the first time the prospect of officially-proscribed beliefs, the alleged embrace of which will result in criminal charges.

2

Mrs. Hendrickson DID produce "amended returns" concerning 2002 and 2003 containing the content dictated by the government in June of 2010, after the government moved the court to begin fining her daily until she did so. These returns contain the content dictated to Mrs. Hendrickson by the government, and clearly indicated that Mrs. Hendrickson was producing them under duress and that they do not reflect Mrs. Hendrickson's actual beliefs concerning the legal character of her earnings.

Six months later the government complained to the court that these accurate instruments could not be processed by the IRS and successfully used as evidentiary support for its allegation that Mrs. Hendrickson owed taxes for 2002 and 2003. The court then ordered Mrs. Hendrickson to produce new "amended returns" with the same content but with the facts that they were produced under duress, are as dictated by the government, and are not reflective of what Mrs. Hendrickson believes to be true, *concealed from view*.

Mrs. Hendrickson complied with that command as closely as an honest conscience would allow. This time she simply referred on the "reasons for filing" line of the 1040X forms she completed to an affidavit she submitted to the court on which she indicated the coerced and dictated character of these new "returns".

The government was still unsatisfied, apparently unable to tolerate any hint in the tax-agency record that these false instruments were anything but testimony freely-made by Mrs. Hendrickson. The government filed a new motion asking the court to hold Mrs. Hendrickson in contempt, in February of 2011. Mrs. Hendrickson filed a response challenging the motion, and no ruling on that matter has ever issued in the ensuing two-and-a-half years.

As will be shown, even leaving aside the fundamental invalidity of the deeply-corrupt core notion of enforced orthodoxy and the punishment of inconvenient testimony, contrary to the allegations of the indictment Mrs. Hendrickson did NOT base any filing on the proscribed view spelled-out in Judge Edmunds injunction. Nor did Mrs. Hendrickson willfully violate any lawful and valid order to create and subscribe "amended returns" or to swear to her own belief in the content of testimony dictated to her by others. She should not be punished, or even inconvenienced, for having testified truthfully according to the law and her conscience.

## Argument

### A. Mrs. Hendrickson did NOT defy the order actually given in making her testimony concerning 2008, regardless of its validity

The indictment alleges that Mrs. Hendrickson testified on her tax-related instruments based on the notions that *"only federal, state or local government workers are liable for the payment of federal income tax or subject to the withholding of federal income, social security and Medicare taxes from their wages under the internal revenue laws"* (notions that Mrs. Hendrickson fully agrees to be frivolous and even nonsensical), and that she was enjoined from testifying based on these notions. These notions are alleged to be what is presented in the book, Cracking the Code- The Fascinating Truth About Taxation In America, authored by Mrs. Hendrickson's husband.

However, Mrs. Hendrickson has read the book and knows and understands its contents. She knows that these false and frivolous notions are NOT presented in Cracking the Code....  The gratuitous government-serving assertion to the contrary is that of a bureaucrat who carefully

4

excerpted a few phrases from the book and presented them out of context in a government filing in the underlying case. What the book actually DOES point out, among other things, is that capitations and other direct taxes-- insofar as they fall on revenue or the activities which produce it-- are taxes on *un*specialized revenues (or the unspecialized activities which produce them) and require apportionment, per Article 1, Section 2, Clause 3 and Article 1, Section 9 Clause 4 of the United States Constitution, and that the United States Supreme Court and other authorities have plainly stated on numerous occasions that this requirement remains fully in place today. Therefore, whatever qualifies as "income" subject to the unapportioned "income tax" is necessarily of a specialized character. The nature of that special character is irrelevant here-- it is enough that what qualifies for the tax is distinguished *in some way* from the broad class of revenue or revenue-producing activity.

Cracking the Code... goes on to observe that because what qualifies as "income" subject to the tax is specialized, what is *not* specialized-- that is, revenue *not* distinguished in any fashion from the mere exercise of every American's individual rights to trade and engage in any lawful economic, remunerative or gainful activity-- *does not* qualify for the tax. This is axiomatic, and also plainly incorporated into the body of tax law as written.

Mrs. Hendrickson's returns are not informed by the fabricated and frivolous notion falsely ascribed to the book Cracking the Code... by the government's lawyers. Rather, they are informed by her understanding that not all revenue qualifies as "income", and her belief that her earnings are of no special character, and are, instead, simply the non-"income" product of her

5

exercise of every American's individual rights to trade and engage in any lawful economic, remunerative or gainful activity (see Affidavit of Doreen Hendrickson attached).

Mrs. Hendrickson's filings are also informed by her belief that when completing a tax form for the purpose of declaring over her own sworn signature what, if any, of her earnings qualifies for reporting as "income" *to the best of HER knowledge and belief*, she surely has an absolute right (and indeed, an obligation) to be truthful. Not having based her testimony on the frivolous and nonsensical notion that, *"only federal, state or local government workers are liable for the payment of federal income tax or subject to the withholding of federal income, social security and Medicare taxes from their wages under the internal revenue laws"*, Mrs. Hendrickson *did not* defy the order issued by the court.

## B. Orders seeking to dictate or otherwise control Mrs. Hendrickson's testimony are inherently and dangerously unlawful, and violate the US Constitution's First and Fifth Amendments

If Mrs. Hendrickson has been commanded to refrain from basing her filings on spurious nonsense falsely ascribed to <u>Cracking the Code...</u>, then she has complied, even without regard to the fundamental impropriety of such a command. If, however, the order is taken as a command that she testify to an effect (or based on a notion) preferred by the court or the government (such as to declare a belief that her earnings are of the taxable variety, or to base her filings on the notion that ALL earnings are of a taxable variety)-- or to *not* testify to an effect *disfavored* by the court or the government (such as in any fashion that declares her belief that her earnings are

NOT of the taxable class), it is a *transparently unlawful* order regardless of the context in which it is given.

When context and particulars are considered, such an order is even more obviously unlawful. When asked on a tax form to declare and certify her beliefs concerning what, if any, of her earnings qualify as reportable "income"-- and to exclude from that declaration those earnings she believes do not so qualify-- Mrs. Hendrickson has an absolute right (and indeed, an obligation) to be truthful in light of *her* understanding of the law. In light of our Constitutional protections, and the plain reporting requirements of the income tax laws, what could be more self-evident?

No person, and especially no American, can be lawfully made to swear to facts or opinions contrary to what she believes to be true. This is so fundamental a principle that Congress is explicitly prohibited from transgression in the First Amendment of the United States Constitution. Indeed, the Supreme Court has affirmed that no circumstance can validly compromise this principle:

> "As we stated in *West Virginia State Board of Education v. Barnette,* 319 U. S. 624, 319 U. S. 642 (1943), 'If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.'"

*First Unitarian Church v. Los Angeles,* 357 U.S. 545 (1958).

No valid government interest can be served by such an order. Any government interest needing such coercion and control of testimony in blatant defiance of the *"fixed star in our*

*constitutional constellation"* to speak free of any imposition of orthodoxy secured by the First

Amendment is ipso facto invalid:

> "If [a provision of the Constitution] will thwart the effectiveness of a system of law
> enforcement, then there is something very wrong with that system."

*Escobedo v. Illinois*, 378 U.S. 478 (1964).

Certainly, it would be convenient for the government to be able to force citizens to swear

as it commands. It would be manifestly convenient, and therefore in the government's interest, if

it could force every defendant in every legal action it brings to sign a sworn statement endorsing

the government's preferred view of the facts and contributing "evidence" to support its cause of

action, as is being attempted here. This would also be manifestly lawless and un-American.

Freedom of conscience-- the right of every person to testify on her own behalf, in her

own words and to the truth as she believes it to be-- is not a "religious" concept. It is a core pillar

of all aspects of the rule of law and is the very foundation of the due process guaranteed to all

Americans in the Fifth Amendment to the United States Constitution. Both fail utterly if the state

is allowed to control the testimony of its adversaries. No court outside those involved in the

underlying case has ever permitted this outrageous behavior. A dangerous precedent has been set

that should not have been, and this Honorable Court has the opportunity, the power and the

responsibility to overturn it.

**C. The injunctive orders seeking to control Mrs. Hendrickson's testimony are not
authorized by 26 U.S.C. § 7402(a), and the District Court therefore lacked jurisdiction to
issue or enforce them.**

The authority to issue injunctions in matters of this sort is granted to the courts by the statute reflected at 26 U.S.C. § 7402(a). That statute provides a general jurisdiction to issue judgments and injunctions "when necessary or appropriate." *Necessity* can only arise when an actual controversy has arisen, and *appropriateness* is presumably measured by the law applied to the facts.

The government has never challenged or disputed Mrs. Hendrickson's testimony with returns of its own as it is authorized and required to do per 26 U.S.C. § 6020(b) when possessed of legitimate grounds for doing so:

> (1) If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefore, or makes, willfully or otherwise, a false or fraudulent return, **the Secretary shall make such return** from his own knowledge and from such information as he can obtain through testimony or otherwise.
> (2) **Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes**. (Emphasis added.)

26 USC § 6020(b)[1]

Nor has the government produced any other evidence putting her already-filed returns for 2002 or 2003 into controversy. It has presented only assertions by government lawyers throughout the entirety of the underlying case, none of whom are competent to testify (and none of whom were even under oath in averring anything). Further, the provisions of § 6020(b) furnish and specify the government's only actual legal remedy to any legitimate need for returns contrary to returns already filed, even if it does have a sincere dispute with the testimonial

---

[1] "Shall" in statutes is mandatory. "The mandatory 'shall' … normally creates an obligation impervious to judicial discretion."
Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998).

content of those returns. Such government-produced returns being *prima facie* good for all legal

purposes, 26 U.S.C. § 6020(b) is a *complete* remedy. A statutory remedy precludes equitable

remedies:

> "[A] common-law [suit] "may be entertained only in the absence of a statutory remedy"
> [and] "where statutory relief is afforded and clearly applies to the circumstances giving rise
> to the action, the statute constitutes the exclusive avenue for seeking redress."

*Aarti Hospitality, LLC v. City of Grove City*, 2009 U.S. App LEXIS 20883 (6th Cir. 2009),
quoting *Westbrook v. Prudential Ins. Co. of Am.*, 37 Ohio St. 3d 166, 524 N.E.2d 485, 488-89
(Ohio 1988);

> "Tax cases do not lend themselves to an equitable solution. The Tax Code and regulations
> are technical and must be interpreted accordingly, like a game which must be played strictly
> in accordance with the rules. *Ewing v. United States,* 914 F.2d 499, 501 (4th Cir. 1990)."

*Blatt v. United States*, 830 F. Supp 882, 888 (W.D.N.C.1993), aff'd, 34 F.3d 252 (4th Cir. 1994);

> " 'a precisely drawn, detailed statute pre-empts more general remedies.' " *EC Term of Years
> Trust v. United States*, 550 U. S. ___, ___ (2007) (slip op., at 4) (quoting *Brown v. GSA*, 425
> U. S. 820, 834 (1976) ); see also *Block v. North Dakota ex rel. Board of Univ. and School
> Lands,* 461 U. S. 273, 284–286 (1983) . We are also guided by our past recognition that
> when Congress enacts a specific remedy when no remedy was previously recognized, or
> when previous remedies were "problematic," the remedy provided is generally regarded as
> exclusive. Id., at 285; *Brown,* supra, at 826–829."

*Hinck v. United States*, 550 U.S. 501 (2007)

In light of the government's failure to controvert Mrs. Hendrickson's original returns, and

in light of its statutory opportunity and obligation to make returns of its own-- which, if made,

are *prima facie* good for all legal purposes, and answer all of the government's legitimate need

for returns of any description-- the injunctions ordered by the court seeking to control and dictate

the content of Mrs. Hendrickson's returns are neither necessary nor appropriate, and therefore

can't invoke the court's jurisdiction.

10

At the same time, the guaranteed chilling effect of what the District Court demands, plus its obvious infringement on Mrs. Hendrickson's rights, make the injunctions requested utterly inappropriate. No one, not even a federal court, can appropriately say words to the effect of, *We'll throw you in jail or fine you until you say what we want you to on a federal income tax form and sign your name to it, or we'll find you criminally liable for failing to do so, or for saying on such a form what we don't want you to say.* See *Wooley v. Maynard*, 430 U.S. 705 (1977) ("The right to speak and the right to refrain from speaking are complementary components of the broader concept of "individual freedom of mind."); *First Unitarian Church v. Los Angeles*, 357 U.S. 545 (1958) ("[N]o official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."). Being issued without jurisdiction, and being in any event manifestly unnecessary and egregiously inappropriate, the injunctions Mrs. Hendrickson is alleged to have violated are improper and unlawful, and thus not binding and impossible to violate.

**D. The orders Mrs. Hendrickson is accused of violating were issued without jurisdiction due to the government's lack of standing, and are therefore invalid.**

The court in the underlying case lacked jurisdiction to issue the orders Mrs. Hendrickson is accused of violating due to the government's lack of standing to seek such orders as a "remedy." No one is under a valid, lawful duty to attest to what the Government wishes said, or what the Government believes to be true, or even what the Government believes the witness believes to be true – and therefore the Government cannot be harmed by anyone's failure to do

11

so. Without harm there is no standing. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); *Allen v. Wright*, 468 US 737 (1984).

There is a duty that certain tax forms be executed under penalties of perjury, and the government may have authority to punish someone for willfully putting incorrect information on a form of that sort if it has grounds for making such an accusation. The government also has authority (and is mandated) per 26 U.S.C. § 6020(b) to produce testimony of its own in competition with testimony with which it chooses to disagree, expressing its view of the facts under oath, and therefore in a manner equal in evidentiary credibility to that of the filing with which it feels it has grounds to disagree. This opportunity (and obligation) allows the government to protect its own interests, and is a *prima facie* complete remedy for all its needs regarding material on, or conveyed by way of, a return. 26 U.S.C. § 6020(b).

> "[T]he purpose of section 6020(b)(1) is to provide the Internal Revenue Service with a mechanism for assessing the civil liability of a taxpayer who has failed to file a return, [or filed what the government deems to be a "false or fraudulent" return]..."

*United States v. Lacy*, 658 F.2d 396 (5th Cir. 1981) (citing *United States v. Harrison*, 486 F.2d 1397 (2d Cir. 1972).

But the government does not and cannot have authority to force someone to adopt, endorse and sign-off on its version of the facts-- especially not someone it is suing; and most obviously not when the government itself has refused to put its own signature to that version of the facts under circumstances in which it can and must do so. The government certainly cannot allege someone to be under a duty to do something it has no right to compel (and which it cannot attempt to compel without engaging in violation of the victim's rights); nor can the government

12

allege someone to be under a duty to do something of which it manifestly has no need.

Without a duty there is no harm; without harm there is no standing; without standing there is no jurisdiction. Since there was no jurisdiction for the issuance of the orders Mrs. Hendrickson is accused of violating, those orders are invalid and unenforceable.

**E. An order to testify falsely is an order to commit a crime, as well as being itself a crime, and thus is unlawful and unenforceable.**

To coercively dictate the content of Mrs. Hendrickson's testimony is, by the nature of the act, to command her to testify falsely, even if only by silence, which is itself a form of testimony. See *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). False testimony is a crime. See 18 U.S.C. § 1621. Silence is capable of inviting criminal "failure to file" penalties when practiced in the context of the tax system, as well. See, e.g. 26 U.S.C. § 6011(a). Subornation of perjury is also a crime. See 18 U.S.C. § 1622.

Orders to this effect or having this effect are transparently unlawful-- and this is so even if it is presumptuously imagined that the "testimony" thus commanded, which is, after all, not merely accounting data but testimony as to Mrs. Hendrickson's beliefs, could somehow be known by someone else to be true. The impropriety is emphasized by the fact that the command comes from, or at the behest of, a "someone else" unwilling to testify to the same effect over his or her OWN signature, and the fact that it comes in the face of Mrs. Hendrickson's freely-made sworn testimony to the contrary. But such orders would be just as improper even if they happened in a void, as the United States Supreme Court observes in two of its many condemnations of coerced testimony:

13

"[T]he admission into evidence of confessions which are involuntary, *i.e.,* the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true, but because the methods used to extract them offend an underlying principle..."

*Rogers v. Richmond*, 365 U.S. 534 (1961)

"Use of involuntary verbal confessions... ... is constitutionally obnoxious not only because of their unreliability. They are inadmissible under the Due Process Clause even though statements contained in them may be independently established as true. Coerced confessions offend the community's sense of fair play and decency."

*Rochin v. California*, 342 U. S. 165 (1952)

## F. The orders given are invalid due to being impossible to comply with, and therefore invalid and unenforceable.

Mrs. Hendrickson was ordered to produce sworn instruments containing content dictated by the government (or court) and swear that content to be her own when it was not (or to refrain from including content of a sort or to an effect disfavored by the government or court, which amounts to the same thing). A coerced, dictated instrument of this sort is not an income tax return.

A return is a testimonial instrument, sworn to reflect and contain what is believed to be true in the eyes and mind of the signer. The affirmation made on a return reads: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." http://www.irs.gov/pub/irs-prior/f1040--2008.pdf

An instrument purporting to be a return but which contains testimony, content and conclusions of anyone other than the signer is a fraud; if that testimony, content and conclusions

14

are adverse to the signer's interests and are coerced, it is an instrument of extortion. But it is not a return.

By the orders given, Mrs. Hendrickson was commanded to produce something that cannot exist-- an instrument containing coercively-dictated, personally-disbelieved testimony which is nonetheless an income tax return. There is and can be no such instrument, and thus, it is not possible for the orders given to be complied with.

This is not some finely-parsed nuance or technicality of law. The testimonial character of a return is the whole character of the thing. An insincere instrument purporting to be a return is no more a real return than is a lie on the witness stand actual "testimony". Indeed, a "return" for which any reason exists to doubt that it is a sincere reflection of the signer's belief as to its veracity is deemed invalid by written policy of the IRS Office of Chief Counsel, and has been held to be invalid by every court that has ever considered the matter:

> "Where [anything] is found to negate, or at least cast doubt on, the validity of the jurat, courts have concluded that the Form 1040 is not signed under penalties of perjury and is therefore not a valid return. See e.g., *Sloan v. Commissioner*, 53 F.3d 799 (7th Cir. 1995) (the taxpayers wrote in the jurat box above their signatures "Denial & Disclaimer attached as part of this form" and the court found that the attachment cast doubt on the veracity of the return); *Williams v. Commissioner*, supra. (taxpayer's attached "disclaimer," although outside of the jurat box, negated the meaning of the jurat); *Letscher v. United States*, 2000 U.S. Dist. LEXIS 13061, 2000-2 U.S. Tax Cas. (CCH) P50,723 (taxpayer's addition of "Without prejudice, See attachment dated 4/13/96" above his signature in the jurat box invalidated the return because the referenced attachment called into question the truthfulness and accuracy of his return)." "If [something] negates or casts doubt upon the jurat, the Service may treat the Form 1040 as a nullity."

*Department of the Treasury, Internal Revenue Service, Office of Chief Counsel, Memorandum for Ogden Service Center, Number: 200127045, 7/6/2001*

The orders made to Mrs. Hendrickson commanding her to create *tax returns* which are inherently insincere demand that she do what cannot be done. Mrs. Hendrickson cannot be guilty of violating an impossible command.

## Conclusion

The government has every right to look out for its financial interests as provided for by law. But it no more has the right to order testimony serving its interests from Mrs. Hendrickson than Mrs. Hendrickson has a right to dictate sworn testimony to a government official which would serve HER interest.

Here, the law authorizes and requires the government to create sworn and subscribed tax returns of its own if it disputes the freely-made tax-related testimony made by someone else. The government is unable or unwilling to do this. Being willing, however, to violate Mrs. Hendrickson's rights, suborn perjury, and erode-- if not entirely eviscerate-- the principles of due process and the rule of law, the government sought transparently unlawful and inherently impossible orders from a court that doubtless took it on faith that the DOJ attorneys who wrote them for her signature were somehow working within the law.

As should now be clear, those were not working within the law. The rightness or wrongness of the underlying case is immaterial; the orders given, whatever the reasons for them, are transparently unlawful and inherently impossible. These orders:

- demand false testimony from Mrs. Hendrickson;
- violate the sovereignty of Mrs. Hendrickson's conscience;

16

- violate Mrs. Hendrickson's rights to speak freely and to refrain from speaking against her own interests and her own will;

- attack the integrity of the rule of law;

- are issued without jurisdiction both for being unnecessary and inappropriate in light of the government's statutory remedy (and mandate) of the production of its own returns, and because the government lacks standing, being owed no duty by Mrs. Hendrickson to testify with words pleasing to the government;

- embody a falsehood about the basis for Mrs. Hendrickson's testimony; and

- demand the creation of something that cannot be created (a testimonial instrument that is coerced, contains dictated content not believed to be true by the affiant, and is falsely attested-to, which is nonetheless somehow valid); and

- seek, deliberately, to conceal the fraudulent and coercive character of the false testimonial instruments being demanded.

The rule of law is utterly befouled where a government can command a citizen to attest to agreement with statements the content of which it dictates. The orders which Mrs. Hendrickson is accused of violating were not violated and cannot be violated, for they are unlawful and invalid and Mrs. Hendrickson had good reason to recognize them as such. In any event those orders cannot be complied with, for they are impossible, and therefore unenforceable and void. The indictment against Mrs. Hendrickson should be DISMISSED with PREJUDICE.

## Prayer

Doreen Hendrickson prays this Honorable Court to DISMISS the charges against her, with PREJUDICE

Respectfully submitted this _29_ day of June, 2013

Doreen Hendrickson, in propria personam
232 Oriole Rd.,
Commerce Twp., Mich. 48382
248-366-6858
doreen@losthorizons.com

Attached: Affidavit of Doreen Hendrickson

18

## CERTIFICATE OF SERVICE

I hereby certify that this day a true and correct copy of the foregoing

**MOTION OF DEFENDANT DOREEN HENDRICKSON TO DISMISS** was served via U.S.

first-class mail upon the following counsel:

> Jeffrey B. Bender
> U.S. Department of Justice
> Tax Division
> P. O. Box 972, Ben Franklin Station
> Washington DC, 20044

Dated:  June 28 , 2013

Doreen M. Hendrickson

# AFFIDAVIT OF DOREEN HENDRICKSON

1. I affirm these matters to be true of my personal knowledge and, if called to do so, could and would competently testify thereto.

2. I do not believe that *"only federal, state or local government workers are liable for the payment of federal income tax or subject to the withholding of federal income, social security and Medicare taxes from their wages under the internal revenue laws"*.

3. I have never based the content I provided on any tax-related instrument or the conclusions reflected therein on the notion that *"only federal, state or local government workers are liable for the payment of federal income tax or subject to the withholding of federal income, social security and Medicare taxes from their wages under the internal revenue laws.*

4. The content to which I attested as being what I know and believe to be true, complete and correct on the tax-related documents I freely signed concerning 2002, 2003 and 2008, and the conclusions reflected therein, are informed by my awareness that the United States Constitution prohibits the imposition of federal capitations and other direct taxes other than by the mechanism of apportionment at Article 1, Section 2, Clause 3 and Article 1, Section 9, Clause 4.

5. That content and those conclusions are further informed by my awareness that the United States Supreme Court and other authorities have repeatedly and consistently declared that the rules laid down in Article 1, Section 2, Clause 3 and Article 1, Section 9, Clause 4 are unaffected, unrevoked and un-repealed by the 16th Amendment to the US Constitution or any other, as in the following instances:

> *"We are of opinion, however, that the confusion is not inherent, but rather arises from the [erroneous assumption] that the 16th Amendment provides for a hitherto unknown power of taxation; that is, a power to levy an income tax which, although direct, should not be subject to the regulation of apportionment applicable to all other direct taxes." [an error which is obvious, since it would cause]* "...one provision of the Constitution [to] destroy another; that is, [it] would result in bringing the provisions of the Amendment [supposedly] exempting a direct tax from apportionment into irreconcilable conflict with the general requirement that all direct taxes be apportioned."
> Brushaber v. Union Pacific RR Co., 240 U.S. 1 (1916)

> *"[T]he amendment made it possible to bring investment income within the scope of the general income-tax law, but did not change the character of the tax. It is still fundamentally an excise or*

1ry Department legislative draftsman F. Morse Hubbard summarizing the ruling for
'ess in testimony in 1943 (House Congressional Record, March 27, 1943, p. 2580);



DEFENDANT'S
EXHIBIT

CASE
NO. *13-cr20371*

EXHIBIT
NO. *1*

1

*"The Amendment, the [Supreme] court said [in its unanimous ruling in Brushaber v. Union Pacific RR Co., 240 U.S. 1 (1916)], judged by the purpose for which it was passed, does not treat income taxes as direct taxes but simply removed the ground which led to their being considered as such in the Pollock case, namely, the source of the income. Therefore, they are again to be classified in the class of indirect taxes to which they by nature belong."*
Cornell Law Quarterly, 1 Cornell L. Q. 298 (1915-16);

*"The Supreme Court, in a decision written by Chief Justice White, first noted that the Sixteenth Amendment did not authorize any new type of tax, nor did it repeal or revoke the tax clauses of Article I of the Constitution, quoted above. Direct taxes were, notwithstanding the advent of the Sixteenth Amendment, still subject to the rule of apportionment..."*
Legislative Attorney of the American Law Division of the Library of Congress Howard M. Zaritsky in his 1979 Report No. 80-19A, entitled 'Some Constitutional Questions Regarding the Federal Income Tax Laws'.

*"The Sixteenth Amendment, although referred to in argument, has no real bearing and may be put out of view. As pointed out in recent decisions, it does not extend the taxing power to new or excepted subjects..."*
Peck v. Lowe, 247 U.S. 165 (1918);

*"[T]he settled doctrine is that the Sixteenth Amendment confers no power upon Congress to define and tax as income without apportionment something which theretofore could not have been properly regarded as income."*
Taft v. Bowers, 278 US 470, 481 (1929).

*"[T]he sole purpose of the Sixteenth Amendment was to remove the apportionment requirement for whichever incomes were otherwise taxable. 45 Cong. Rec. 2245-2246 (1910); id. at 2539; see also Brushaber v. Union Pacific R. Co., 240 U. S. 1, 240 U. S. 17-18 (1916)"*
So. Carolina v. Baker, 485 U.S. 505 (1988).

6. That content and those conclusions are further informed by my awareness that Constitutional "capitations", which remain imposable only by the mechanism of apportionment, have been acknowledged by the United States Supreme Court to be what Adam Smith described as such in his 1776 treatise, 'An Inquiry into the Nature and Causes of the Wealth of Nations':

*"..[Secretary of the Treasury] Albert Gallatin, in his Sketch of the Finances of the United States, published in November, 1796, said: 'The most generally received opinion, however, is that, by direct taxes in the constitution, those are meant which are raised on the capital or revenue of the people;...'*
...
*"He then quotes from Smith's Wealth of Nations, and continues: 'The remarkable coincidence of the clause of the constitution with this passage in using the word 'capitation' as a generic expression, including the different species of direct taxes-- an acceptation of the word peculiar, it is believed, to Dr. Smith-- leaves little doubt that the framers of the one had the other in view at the time, and that they, as well as he, by direct taxes, meant those paid directly from the falling immediately on the revenue;...'"*
Pollock v. Farmer's Loan & Trust, 157 U.S. 429 (1895).

2

7. That content and those conclusions are further informed by my awareness that Adam Smith's definition of capitations includes, among other things:

> "The taxes which, it is intended, should fall indifferently upon every different species of revenue, are capitation taxes,"... "Capitation taxes, if it is attempted to proportion them to the fortune or revenue of each contributor, become altogether arbitrary. The state of a man's fortune varies from day to day, and without an inquisition more intolerable than any tax, and renewed at least once every year, can only be guessed at."..."Capitation taxes, so far as they are levied upon the lower ranks of people, are direct taxes upon the wages of labour, and are attended with all the inconveniences of such taxes."..." In the capitation which has been levied in France without any interruption since the beginning of the present century, the highest orders of people are rated according to their rank by an invariable tariff; the lower orders of people, according to what is supposed to be their fortune, by an assessment which varies from year to year."
> Adam Smith, 'An Inquiry into the Nature and Causes of the Wealth of Nations', Book V, Ch. II, Art. IV (1776)

8. That content and those conclusions are further informed by my awareness that Adam Smith used the common word 'wages' in his work, not the custom-defined term of the same spelling found in the modern revenue laws, thus declaring that among other things, a tax upon common pay-for-labor is a capitation; and also that Smith includes elsewhere in his definition of "capitations" a version imposed under the label "poll taxes," described as taxes assessed as (or on) a portion of an individual's annual gains.

9. That content and those conclusions are further informed by my awareness that Bouvier's Law Dictionary, 6th Ed. (1856), the official law dictionary of Congress in the middle of the 19th century when the income tax was first enacted, and which, in harmony and concert with Adam Smith's definitions, illuminates Congressional intentions as to what their newly-enacted unapportioned "income tax" of 1862 is, and can be, and isn't, and cannot be, contains the following definition:

> "CAPITATION, A poll tax; an imposition which is yearly laid on each person according to his estate and ability."

10. The content to which I attested as being what I know and believe to be true, complete and correct on the tax-related documents I freely signed concerning 2002, 2003 and 2008, and the conclusions reflected therein, are informed by my belief that in light of the foregoing, however much it may have been carefully crafted to appear otherwise, the unapportioned income tax cannot and does not fall on:

- "all that comes in";
- "every different species of revenue";
- "the fortune or revenue of each contributor";
- "the [common-meaning] wages of labour";
- "what is supposed to be one's fortune [per] an assessment which varies from year to year"; or
- "[an assessed percentage] of [one's] annual gains;

3

and it is therefore axiomatic that what qualifies as "income" subject to the tax must be only a specialized and distinguished subclass of gains.

11. That content and those conclusions are further informed by my awareness that the United States Supreme Court and other authorities, including Congress and the United States Department of Treasury, have repeatedly and consistently declared the "income tax" to be an excise tax, as in the following:

> *"I hereby certify that the following is a true and faithful statement of the gains, profits, or income of _____ _____, of the _____ of _____, in the county of _____, and State of _____, whether derived from any kind of property, rents, interest, dividends, salary, or from any profession, trade, employment, or vocation, or from any other source whatever, from the 1st day of January to the 31st day of December, 1862, both days inclusive, and subject to an income tax under the excise laws of the United States:"*
> (from the first income tax return form) (emphasis added);

> *"The income tax is, therefore, not a tax on income* [earnings] *as such. It is an excise tax with respect to certain activities and privileges which is measured by reference to the income which they produce. "*
> F. Morse Hubbard, Treasury Department legislative draftsman.  House Congressional Record, March 27, 1943, page 2580 (emphasis added);

> *"...in Springer v. U. S., 102 U.S. 586 , it was held that a tax upon gains, profits, and income was an excise or duty, and not a direct tax, within the meaning of the constitution, and that its imposition was not, therefore, unconstitutional."*
> <u>Pollock v. Farmer's Loan & Trust</u>, 158 U.S. 601, 1895 (emphasis added);

> *"...taxation on income was in its nature an excise entitled to be enforced as such, "*
> <u>Brushaber v. Union Pacific RR. Co.</u>, 240 U.S. 1 (1916), quoting and reiterating language used in its ruling in <u>Pollock v. Farmer's Loan and Trust</u> (emphasis added).

> *"So the* [16th] *amendment made it possible to bring investment income within the scope of the general income-tax law, but did not change the character of the tax. It is still fundamentally an excise or duty with respect to the privilege of carrying on any activity or owning any property which produces income."*
> F. Morse Hubbard, Treasury Department legislative draftsman.  House Congressional Record, March 27, 1943, page 2580 (emphasis added).

12. That content and those conclusions are further informed by my awareness that the United States Supreme Court and other authorities have consistently and repeatedly declared "excise taxes" to be taxes on the exercise of privileges, as in the following:

> *"...the requirement to pay* [excise] *taxes involves the exercise of privilege."*
> <u>Flint v. Stone Tracy Co.</u>, 220 U.S. 107 (1911);

> *"The terms 'excise tax' and 'privilege tax' are synonymous. The two are often used interchangeably."*
> <u>American Airways v. Wallace</u>, 57 F.2d 877, 880 (Dist. Ct., M.D. Tenn., 1932);

4

*"The 'Government' is an abstraction, and its possession of property largely constructive. Actual possession and custody of Government property nearly always are in someone who is not himself the Government but acts in its behalf and for its purposes. He may be an officer, an agent, or a contractor. His personal advantages from the relationship by way of salary, profit, or beneficial personal use of the property may be taxed..."*
<u>United States v. County of Allegheny</u>, 322 US 174 (1944).

*"The income tax... ...is an excise tax with respect to certain activities and privileges which is measured by reference to the income which they produce. The income is not the subject of the tax; it is the basis for determining the amount of tax."*
Former Treasury Department legislative draftsman F. Morse Hubbard in testimony before Congress in 1943

*"The obligation to pay an excise is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand is lacking. * * * The term "excise tax" is synonymous with "privilege tax" and the two are used interchangeably. Whether a tax is characterized in the statute imposing it as a privilege tax or an excise tax is merely a choice of synonymous words, for an excise tax is a privilege tax."*
71 Am. Jur.2d Sec. 24, pp. 319-320

13. That content and those conclusions are further informed by my awareness that "privilege" is defined as:

*"PRIVILEGE:  A particular benefit or advantage enjoyed by a person, company, or class beyond the common advantages of others citizens. An exceptional or extraordinary power of exemption. A particular right, advantage, exemption, power, franchise, or immunity held by a person or class, not generally possessed by others."*
Black's Law Dictionary, 6th edition;

*PRIVILEGE. A right peculiar to an individual or body. Ripley v Knight, 123 Mass 519. An advantage held by way of license, franchise, grant, or permission, not possessed by others. Special enjoyment of a good, or exemption from an evil or burden. Wisener v Burrell, 28 Okla 546, 118 P 999. An immunity existing under the law. For tax purposes, any occupation or business which the legislature may declare to be a privilege and tax as such. Seven Springs Water Co. v Kennedy, 156 Tenn 1, 299 SW 792 56 ALR 496. (Civil law.) A tacit hypothecation of a thing without any transfer of the possession of it or of the right to possession. The Glide, 167 US 606, 42 L Ed 296, 17 S Ct 930.*
Ballentine's Law Dictionary, 3rd Edition

*PRIVILEGE, rights. This word, taken its active sense, is a particular law, or a particular disposition of the law, which grants certain special prerogatives to some persons, contrary to common right. In its passive sense, it is the same prerogative granted by the same particular law.*
Bouvier's Law Dictionary, 6th Ed. (1856).

13. The content to which I attested as being what I know and believe to be true, complete and correct on the tax-related documents I freely signed concerning 2002, 2003 and 2008, and the conclusions reflected therein, are informed by my belief that my economic activities are not extraordinary, not of any special

5

character, and not distinguished or distinguishable in any way as being within the power of the state to make subject to a charge for the enjoyment thereof, and that in light of the foregoing evidence and authorities nothing I have earned and nothing I have done can properly and honestly be reported on forms intended for the reporting of taxable things other than as I have so reported.

I swear that the foregoing is true and correct to the best of my knowledge.

Executed on June 27, 2013.

Doreen M. Hendrickson

Subscribed and sworn to or

affirmed before me this date: __6 / 27 / 2013__

[seal]          My Commission Expires: __07 / 23 / 2017__

ANNETTE M RHODES
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires: July 23, 2017
Acting in the County of __OAKLAND__

6