UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                         Case No: 13-20371
                                         Honorable Victoria A. Roberts

v.

DOREEN HENDRICKSON,

     Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO VACATE OR FOR A NEW TRIAL ON MULTIPLE GROUNDS (Dkt. # 103)**

## I.     INTRODUCTION

"Errors must be corrected by appeal, not by disobedience." *Porter v. Merhar*, 160 F.2d 397, 403 (6th Cir. 1947). Doreen Hendrickson veils her disobedience of a lawful order of this Court in the defense of "good faith." A jury did not buy it, nor does this Court. Her Motion to Vacate or For a New Trial is **DENIED**.

## II.    BACKGROUND

Hendrickson was tried and convicted of criminal contempt under 18 U.S.C. § 401(3) for failing to comply with an injunctive court order entered by Judge Edmunds in a 2007 civil action ("Edmunds' Order"). Edmunds' Order required Hendrickson to file corrected tax returns for years 2002 and 2003, and refrain from filing false tax returns in the future. A jury found that Hendrickson wilfully violated the Order by filing a fraudulent tax return for 2008, and failing to amend her 2002 and 2003 tax returns.

1

Hendrickson filed a motion to vacate her conviction or for a new trial under Federal Rules of Criminal Procedure 29(c)(2) and 33(a). She gives five reasons why she is entitled to relief: (1) the Government committed fraud by misrepresenting evidence in a prejudicial manner; (2) standby counsel undermined her defense when he omitted questions she instructed him to ask; (3) the Government failed to prove she acted wilfully and without good faith; Hendricksons' interpretation of Edmunds' Order made it clear that she was entitled to the good faith defense; (4) the Government did not prove Edmunds' Order was lawful; and (5) the Government did not prove that Edmunds' Order was comprehensible and possible to comply with.

## III.    STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29(c)(2) allows a court to set aside a jury's guilty verdict and enter an acquittal if, after viewing the evidence in the light most favorable to the prosecution, the court determines no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Donaldson*, 52 F. App'x 700, 706 (6th Cir. 2002). To reverse, the Court must determine that the verdict is not supported by "'substantial and competent evidence'" on the record as a whole. *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007).

The Court cannot re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Instead, the Court must "make all reasonable inferences and credibility choices in support of the jury's verdict." *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006). This standard places a heavy burden on the defendant which is difficult to overcome. *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011).

2

Federal Rule of Criminal Procedure 33(a) says "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The "interest of justice" standard provides relief to a defendant challenging a jury verdict that was against the manifest weight of the evidence, or when substantial legal errors or omissions occurred. *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

"[G]ranting or refusing to grant such motions rests within the sound discretion of the District Court and its action must stand in the absence of a clear showing of abuse of discretion."  *United States v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967). The Court must balance the alleged error against the record as a whole and evaluate the fairness of the trial. *United States v. Bustamante*, 1992 WL 192545 at *1 (6th Cir. Aug. 12, 1992). The defendant bears the heavy burden to show that a new trial is warranted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994).

## IV.    DISCUSSION

### A.    Allegation that the Government Misrepresented Evidence to Improperly Impeach Hendrickson

Hendrickson says the Government committed fraud by saying the civil actions listed in Hendrickson's Exhibit 562 were related to a tax audit. She says the Government filed suits and would later dismiss them in an attempt to enjoin her husband from publishing his first book, "*Cracking the Code The Fascinating Truth About Taxation in America*" *("Cracking the Code")*. She says the Government "obtained a conviction by innuendo and sharp practice rather than on the consideration of the evidence."

3

The Court agrees with Hendrickson that it was improper for the Government to refer to the civil actions listed in Exhibit 562 as audits. An audit "is a review/examination of an organization's or individual's accounts and financial information to ensure information is being reported correctly, according to the tax laws, to verify the amount of tax reported is accurate." *"IRS Audits - What is an IRS audit?"* (last visited Nov. 5, 2014), http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/IRS-Audits. The actions referred to in Exhibit 562 were part of a government investigation into potential abusive tax shelters. But, despite the reference to "audits," Hendrickson's argument fails for three reasons.

First, Hendrickson did not object to the misnomer. Consequently, she cannot raise it in her post trial motion. *United States v. Gross*, 375 F. Supp. 971, 978 (D.N.J. 1974) aff'd, 511 F.2d 910 (3rd Cir. 1975).

Second, the Government properly impeached Hendrickson. Impeachment is the use of a witness' prior inconsistent statements to attack her credibility and to cast doubt on the testimony given. *United States v. Carter*, 417 F.2d 229, 230-31 (3rd Cir. 1969). For instance, during direct examination Hendrickson gave the following testimony about Exihbit 562:

> Q: (Standby Counsel for Hendrickson) Mrs. Hendrickson, could you tell us what documents are contained in 562?"
>
> A: (Hendrickson) ... Petitioner was the United States of America and they filed a Notice of Voluntary Dismissal Without Prejudice in their suit that they brought to stop publication of *Cracking the Code.*
>
> Q: And the following documents - I didn't finish my question - the following documents are Stipulations by the Government and the parties involved with respect to have the case dismissed?
>
> A: That's Correct.

4

> Q: And these are related to one of those actions you said that the Government brought prior to filing the lawsuit with Judge Edmunds against your husband, correct?
>
> A: That is correct.
>
> Q: And what opinion did you form based on these dismissals about the validity of *Cracking the Code*?
>
> A: Well, they were trying to enjoin my husband from making the book available to people who want it..."

Trial Tr., vol. IV, at 80 - 81. During cross-examination the Government got Hendrickson

to admit that the cases referenced in Exhibit 562 were not cases to hinder publication of

*Cracking the Code*:

> Q: (Government) You testified yesterday that this Exhibit (562) contained three lawsuits or related to three lawsuits that the Government filed against your husband to stop him form publishing his book, is that right?
>
> A: (Hendrickson) Yes.
> ...
> Q: Isn't it true that the these three cases you included in Exhibit 562 and talked about yesterday have nothing to do with the IRS trying to stop your husband from publishing his book?
>
> A: I just found that out this morning.
> ...
> Q: I want to show you what is marked for identification as Government Exhibits 47, 48, 49. Do you want to take a moment to look through those?
>
> A: It would take me more than just a moment to look through something like this. These were filed against my husband and I really did not deal with them and I would not be able to process them in this short a period of time.
>
> Q: So you're saying you're not familiar with these cases?
>
> A: Probably when it first happened...
>
> Q: But you had no problem testifying yesterday as to those same three cases that you knew what they were.
>
> A: Yes. If I'm familiar with something, that's different, but I'm not familiar with this right now. This is 10 years ago.
> ...

5

Q: I'm asking you does the first page of Exhibit 562 relate to a civil case here in the Eastern District of Michigan, 04-72323?

A: It does.

Q: Isn't it true, Mrs. Hendrickson, that the case was an effort to get your husband to produce documents to the IRS as part of an audit that was being conducted?

A: Again, you're asking me about something that happened 10 years ago?

Q: Yesterday to get this document into evidence, to get this document into evidence yesterday you testified that you knew what this case was and today your testimony is that you're not familiar with it?

A: There were cases to have the book not be published and I got them mixed up. Those were the ones I'm more familiar with, but these others I'm not as familiar with. I'm sorry.

Q: Mrs. Hendrickson, isn't true that the Government has never filed a case against your husband to stop him from publishing a book, not once?

A: That's not my recollection.

Q: So what case is that you're referring to in which they sued to do that?

A: I don't have the paperwork here obviously.
...

Q: And do you see that this case in Government Exhibit 47 relates to efforts to enforce a summons that was served on your husband as part of an audit?

A: I see...
...

Q: So this case that we have here on the screen which you testified yesterday was a lawsuit brought by the Government to stop your husband from publishing a book actually isn't that at all, is it?

A: I've already acknowledged that I made a mistake.

Trial Tr., vol. V, at 14-17. Hendrickson acknowledged on the stand that the actions listed in Exhibit 562 were not lawsuits brought to enjoin publication of the book. On cross examination she contradicted testimony she gave on direct examination. She seemed confused and was unable to answer basic questions about her own exhibit.

    A reasonable jury could have determined that Hendrickson's contradictory

6

testimony and unfamiliarity with her own exhibit suggested she was untruthful or lacked credibility. The Government was able to cast doubt on Hendrickson's testimony and got her to admit her statements were wrong. Thus, she was properly impeached.

Finally, Hendrickson fails to establish her conviction is not supported by substantial and competent evidence. The Government did misuse the term "audit." However, this, without more, is not enough to prevail under Fed. R. Crim. P. 29 and 33.

### B.    Performance of Standby Counsel

Hendrickson challenges the performance of standby counsel. She says he usurped her defense and engaged in conduct that suited his own view of the case. She says he undermined her defense by failing to ask certain questions during direct examination. The questions concerned case law that Hendrickson says proved Edmunds' Order violated her First Amendment rights. Hendrickson also says she relied on standby counsel's representation that she could present these cases during closing argument; the Court did not allow them to be argued.

It is difficult for the Court to evaluate this objection because Hendrickson did not attach the questions standby counsel failed to ask. Instead, she states in conclusory fashion that the omission of the questions undermined her trial and verdict.

It may be the case that this objection is waived because Hendrickson did not object during trial. See, *Gambill v. United States*, 276 F.2d 180, 181 (6th Cir. 1960) ("A defendant cannot seemingly acquiesce in his attorney's defense and after the trial has resulted adversely to him obtain a new trial because of the incompetency of his attorney").

However, assuming for the sake of argument that certain questions were not

7

asked, Hendrickson fails to demonstrate standby counsel usurped control of her defense. According to *Faretta v. California*, 422 U.S. 806, 819 (1975), a *pro se* defendant has the right to self-representation at court proceedings. This right is undermined when standby counsel excessively participates in the proceedings, essentially destroying the jury's perception that the defendant is acting *pro se* and makes significant tactical decisions which substantially interfere with the right of self-representation. *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984).

Hendrickson fails to demonstrate that standby counsel made it appear to the jury that she was not proceeding *pro se.* And, she fails to demonstrate how standby counsel's omission of questions from direct examination amounted to interfering with a significant tactical decision, since presentation of the cases that supposedly furthered her First Amendment argument would be cumulative.

For example, throughout trial Hendrickson argued Edmunds' Order was unconstitutional, and the First Amendment excused her from compliance. She communicated this argument during her testimony and through witnesses. Hendrickson argued this point despite the fact the Sixth Circuit held on numerous occasions that Edmunds' Order was constitutional. *United States v. Hendrickson*, No. 07-1510 (6th Cir. June 11, 2008); *United States v. Peter Hendrickson*, *et al*, No. 10-1824 (6th Cir. November 22, 2011).

The Court examined the evidence in the light most favorable to the Government, and it is clear that the verdict is supported by substantial and competent evidence. Omission of the alleged questions did not constitute substantial error requiring the judgment to be vacated. The jury heard Hendrickson's First Amendment reliance

8

throughout the trial and still found her guilty. The verdict is not against the great weight of evidence and it will not be disturbed.

### C.    Evidence of Hendrickson's Wilfulness and Lack of Good Faith

Hendrickson says the Government failed to prove she acted without good faith when she did not follow the Order. She says she acted in accordance with the requirements of the good faith defense and she could not be convicted of contempt. In fact, she says department officials from government agencies never "took a formal position contrary to [hers]" and, as a result she was "awash in confirmations that the government itself has no good-faith dispute with her views."  She also says a reasonable jury could not convict her for violating Edmunds' Order based on a particular tax evasion theory the Government says was in *Cracking the Code* because it was not in the book.

To obtain a conviction for criminal contempt the government must prove that a person acted wilfully. *Downey v. Clauder*, 30 F.3d 681, 686 (6th Cir. 1994). Wilfulness is defined as "a  deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation." *Id.* at 686. One who acts wilfully knows or should reasonably be aware that her conduct is wrong. *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986).

Good faith is a complete defense to criminal contempt. *United States v. Ray*, 683 F.2d 1116, 1126 (7th Cir. 1982). The defense is available when a defendant has not refused to comply with the court order she is charged with violating, but fails to comply because of the indefiniteness of the order or some other inability to do so. *Id.*

Hendrickson's good faith argument fails to meet the burden required to prevail

9

under Fed. R. Crim. P. 29 or 33. Hendrickon misconstrues the good faith defense.

Hendrickson argues "good faith" allowed her to disobey "orders which she perceives as

dictating or controlling the contents" of her belief. She says such orders "are unlawful

and impose no valid legal obligation upon her." Essentially Hendrickson argues that she

can disobey any court order she disagrees with. That is nothing more than an

intentional violation of a valid court order. That is wilfulness. That is not good faith.

There is ample evidence that Hendrickson acted wilfully, without good faith, and

in reliance on theories contained in *Cracking the Code*. For instance, Hendrickson

testified she was the only person who accurately understood tax laws, and that her

beliefs were in part based on *Cracking the Code*:

> Q: (Government) So you believe that the Internal Revenue Service, the Department of Justice, Judge Edmunds and the three-judge panel of the 6th Circuit Court of Appeals, they all don't understand the law, but you do?
>
> A: (Hendrickson) They all disagree with me, yes.
>
> Q: You think they're all wrong in their reading of the tax laws?
>
> A: Yes, I do.
>
> Q: But you are correct?
>
> A: Yes, I do believe that unequivocally.
>
> Q: And that's because based on your reading of *Cracking the Code*, you have this theory, this understanding of why the money that you and your husband made wasn't income?
>
> A: It's not just *Cracking the Code*
>
> Q: But that was one of the sources you consulted?
>
> A: Correct.

Trial Tr., vol. V, at 37.

Also, when Hendrickson submitted her amended tax returns to the IRS they

10

could not be processed because Hendrickson defaced them in violation of Edmunds' Order. Trial Tr., vol. V at 31-32. When Hendrickson filed another tax return, she attached an affidavit that said, "I further disclaim these coerced returns because they are wholly false and fraudulent and not the product of my free will, but rather a product of the imposition of the power of the Government and the Court over my civil liberties and person." Trial Tr., vol. V at 33.

A reasonable jury could find that Hendrickson lacked good faith and wilfully disobeyed the Order. Despite numerous government agencies, which undoubtedly have more experience interpreting tax laws than Hendrickson, repeatedly telling her that her theories were wrong and violated the law, Hendrickson stayed firm in her beliefs. She consistently relied on tax theories that have been debunked by multiple authorities to justify her disregard of the Order. She defaced a tax amendment, rendering it useless directly in violation of Edmunds' Order. And, she continued her misguided and futile protest against the Order by attaching a frivolous affidavit to another amendment. All of these actions demonstrate willfulness.  A jury could reasonably conclude that Hendrickson was not entitled to the good faith defense because her actions demonstrate an unwillingness to comply with Edmunds' Order, rather than an honest inability to comply. The great weight of evidence supports the jury's guilty verdict and a finding that Hendrickson did not act in good faith.

### D.    Legality of Edmunds' Order and Hendrickson's Ability to Comply

Hendrickson says a court never decided that Edmunds' Order was lawful. Therefore, she is not guilty of contempt because the Government did not prove that she violated a "lawful order." Hendrickson also says that the Order was impossible to

comply with, and thus, a jury could not reasonably convict her for her non-compliance.

First, Hendrickson is incorrect that the Government must prove that an order is lawful before instituting contempt proceedings. The Supreme Court said court orders must be followed until they are deemed invalid:

> An injunction duly issuing out of a court ...must be obeyed ... however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.

*United States v. United Mine Workers of Am.*, 330 U.S. 258, 293-94 (1947). *See also*, *Porter*, 160 F.2d at 403. ("in a contempt case, ...[e]rrors must be corrected by appeal and not by disobedience. The violation of a criminal contempt order of court would be punishable as criminal contempt, even had the basic action become moot")(citations omitted). Until a court says otherwise, persons subject to court orders must follow them, and failure to abide by these orders exposes a person to criminal contempt proceedings.

Hendrickson is required to follow Edmunds' Order until a proper authority decides it is unlawful. A reasonable jury could find that her disobedience constituted criminal contempt. The great weight of evidence favors the jury's guilty verdict.

Second, a reasonable jury could find that it was legally possible to comply with Edmunds' Order. While inability to comply with a court order is a complete defense to the crime of criminal contempt, *United States v. Bryan*, 339 U.S. 323, 330 (1950), the *Bryan* defense only refers to physical impossibility beyond the control of the alleged

12

contemnor. *Inmates of Allegheny Cnty. Jail v. Wecht*, 874 F.2d 147, 152 (3rd Cir.1989), *vacated and remanded on other grounds*, 493 U.S. 948 (1989). Self-induced inability is not a defense to a contempt proceeding. *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980).

Evidence was presented throughout the trial that Hendrickson was aware of Edmunds' Order and chose not to comply. She was not physically incapacitated. She had the ability to submit corrected tax returns, yet chose to submit defaced returns inhibiting the IRS from processing them. And, she submitted returns "under protest."

Examining all the evidence in favor of the Government, the Court finds that a reasonable jury could conclude that Hendrickson was able to legally comply with Edmunds' Order, but chose not to do so because of her warped beliefs. Consequently, Hendrickson has not satisfied her burden under Fed. R. Crim. P. 29 or 33.

## V.    CONCLUSION

The Court **DENIES** Hendrickson's motion; she fails to meet her burden under Fed. R. Crim. P. 29 and 33. Hendrickson wilfully disobeyed an order because she disagrees with its contents, and a jury legitimately convicted her for doing so.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 14, 2014

13

The undersigned certifies that a copy of this document was served on the attorneys of record and Doreen Hendrickson by electronic means or U.S. Mail on November 14, 2014.

s/Linda Vertriest
Deputy Clerk