# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES,

    Plaintiff,

v.

DOREEN HENDRICKSON,

    Defendant.

Case No. 13-cr-20371
Judge Victoria A. Roberts

## DOREEN HENDRICKSON'S MOTION FOR THE CANCELLATION OF THE SCHEDULED HEARING TO SHOW CAUSE, THE ORDERING OF HER DISCHARGE FROM CUSTODY, THE VACATING OF HER CONVICTION, AND OTHER RELIEF

Defendant Doreen Hendrickson respectfully MOVES the Court to cancel the currently-scheduled hearing on September 8 over whether she should be found in violation of the terms of her supervised release, order her discharged from custody, vacate her conviction and provide such other relief and remediation as seems proper, due to the Court's lack of jurisdiction throughout all proceedings concerning Mrs. Hendrickson as a consequence of the operation and effects of 26 U.S.C. § 7206(2), as laid out in the accompanying brief.

## ISSUES

1. Whether Doreen Hendrickson's conviction and the questions of her compliance with the terms of supervised release do not fail in the face of Congress having made it a criminal offense to procure or attempt to procure a tax return believed by the signer to be false in any material matter.

## STATEMENT OF MOST APPROPRIATE AUTHORITY

26 U.S.C. § 7206(1) and (2) are the most appropriate authority controlling the issues raised herein.

# **BRIEF IN SUPPORT OF DOREEN HENDRICKSON'S MOTION FOR THE CANCELLATION OF THE SCHEDULED HEARING TO SHOW CAUSE, THE ORDERING OF HER DISCHARGE FROM CUSTODY, THE VACATING OF HER CONVICTION, AND OTHER RELIEF**

## ARGUMENT

1. Under the special condition which she is accused of having violated, Mrs. Hendrickson is ordered to create so-called "amended returns" containing content dictated by Judge Nancy Edmunds, in replacement of her own freely-made returns concerning the years 2002 and 2003. She is commanded to sign those coerced, dictated-content "amended returns" under penalties of perjury without disclaimers of any kind so as to make it appear that she believes what she is being ordered to say even though she does not. In the past, Mrs. Hendrickson has challenged this order on the basis of it being a prohibited infringement of her Constitutionally-secured rights of speech and due process and because it commands her to commit a crime, along with certain other points of argument concerning the order's impropriety in light of competing and conflicting statutory provisions. Throughout, courts of review and courts with an opportunity to respond to these arguments have chosen to leave the order undisturbed, and/or to proceed with punishments of Mrs. Hendrickson for her continued resistance to the order.

2. It has recently come to Mrs. Hendrickson's attention that another ground exists in the law for challenge to the order both as originally sought, made, enforced against her by trial and punishment, and as now threatening her again

1

with more of the same. Under the provisions of 26 U.S.C. § 7206- Fraud and false statements, Congress has *expressly criminalized* the seeking, issuance, and enforcement of exactly the so-called "amended return" order that Mrs. Hendrickson is now accused of disobeying as a violation of her supervised release. (It is worth noting in the same breath that there is no law under which any American can *ever* be required to create or submit amended tax returns-- not even when she *would* believe what is said on them, and not even when outside "expert" opinion has expressed a conclusion to a filer that her original returns were materially incorrect. See Exhibit 1, an excerpt of a 2008 analysis of this subject by Calvin Johnson, Andrews & Kurth Centennial Professor of Law, Univ. of Texas, Austin, School of Law and T. Keith Fogg, Villanova Univ. School of Law).

3. 26 U.S.C. § 7206- Fraud and false statements, subparagraph (2) reads as follows:

> Any person who willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document...shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

26 U.S.C. § 7206(2) Aid or assistance[1]

---

[1] It is to be noted that the subtitle "Aid or assistance" conveys no meaning or mitigation of the nature of the offense described. Under the express terms of the

The definition of "false" used in the text of the statute is derived from the preceding subparagraph of the statute:

> Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;...

26 U.S.C. § 7206(1) Declaration under penalties of perjury

4. No evidence has ever been presented at any point in any proceeding over the course of more than ten years now of this ugly affair rolling along that Mrs. Hendrickson believes what she is ordered to say on the so-called "amended returns". Mrs. Hendrickson has endlessly sworn under penalties of perjury and attested and shown in every other way possible that she does not believe what she is told to say by this order. Mrs. Hendrickson has endlessly sworn under penalties of perjury and attested in every other way possible that in fact, she believes that what she is told to say on these so-called "amended returns" *is false*. This has been known to representatives of the United States and to every court to have had the matter before it. The United States has had many opportunities-- and, in fact, circumstances in which it was under a duty, or at least powerfully incentivized-- to

---

statute, the wrongful act criminalized therein can be committed even without the knowledge or consent of the preparer or presenter of the false returns, thereby nullifying what might otherwise be imagined about the offense from the use of the label "Aid or assistance". Further, the text of the statute disjoins "aids or assists" from "procures, counsels or advises", making these two separate categories of offending behavior; and the origin of this statutory provision, § 1114(c) of the Revenue Act of 1926, contains no such subtitle.

3

produce any evidence whatsoever available for the proposition that Mrs. Hendrickson believes what she is ordered to say. It has produced none whatsoever.

5. <u>The view of those seeking, issuing or enforcing the preparation or presentation of the returns contemplated by 7206(2) as to the correctness or incorrectness of the compelled returns is immaterial to the criminality of the act.</u> The seeking, issuance or enforcement is a crime *if the signer believes* any material thing on the return(s) at issue to be false. The signer's belief is the *sole* metric, and seeking, issuing or enforcing an order to create return(s) the signer does not believe true as to every material matter is the willful commission of the crime.

6. As shown, under the express terms of 26 U.S.C. § 7206(2) any effort to procure or to counsel or advise the preparation or presentation of a return which contains or is verified by a written declaration that it is made under the penalties of perjury, and *which the signer does not believe to be true and correct as to every material matter*, whether or not with the consent of the signer, is a felony. It is thus an expressly criminal act for the Court to order the creation and submission of the so-called "amended returns" at issue in Mrs. Hendrickson's case, completely independently of the manner in which such efforts to procure the preparation or presentation of the false returns violate Mrs. Hendrickson's rights or command her to commit a crime. Likewise, it is a felony for the United States or its

representatives to seek to have these so-called "amended returns" prepared and presented.

7. An order which is itself expressly illegal to seek or issue is manifestly one for which the issuing court can have no jurisdiction, and the same is true for the enforcing court. At a minimum, the DoJ attorneys involved who sought to have Judge Edmunds order the creation of false returns, who sought the enforcement of those orders by charging and having Mrs. Hendrickson held to trial, and who now seek to enforce the false-returns order again in the upcoming proceeding over the alleged violation of a condition of supervised release-- every act of which is a felony under federal law-- fail to confer jurisdiction on either Judge Edmunds' court or this Court. DoJ attorneys-- even when nominally acting in the name of the United States-- cannot confer jurisdiction on any court as an effect of their attempt to commit a crime or co-opt a court into the commission of a crime.

8. This Court is without jurisdiction to order Mrs. Hendrickson to create and/or submit the false returns commanded under the special condition of supervised release included in her sentence, and has been without jurisdiction to try and to sentence Mrs. Hendrickson *ab initio,* just as Judge Edmunds was without jurisdiction to issue these orders.

9. Courts are duty-bound to vacate judgments issued without jurisdiction:

"[A] court must vacate any judgment entered in excess of its jurisdiction."

*Jordon v. Gilligan*, 500 F.2d 701 (6th CA, 1974);

> "If the trial court was without subject matter jurisdiction of defendant's case, his conviction and sentence would be void ab initio."

*State v. Swiger*, 125 Ohio.App.3d 456, (1998);

> "[A void judgment is one that] has been procured by extrinsic or collateral fraud, or entered by a Court that did not have jurisdiction over subject matter or the parties."

*Rook v. Rook*, 353 S.E. 2d 756 (Va. 1987);

> "[D]enying a motion to vacate a void judgment is a per se abuse of discretion."

*Burrell v. Henderson, et al.*, 434 F.3d 826, 831 (6th CA 2006);

10. There is no time limit or other impediment to raising the jurisdictional issue and invoking the Court's obligations as Mrs. Hendrickson does now:

> "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court."

*United States v. Cotton*, 535 U.S. 625, 630 (2002).

> "A "void" judgment, as we all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack (thus here, by habeas corpus). No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen old wounds and once more probe its depths. And it is then as though trial and adjudication had never been."

*Fritts v. Krugh*, Supreme Court of Michigan, 92 N.W.2d 604, 354 Mich. 97 (1958).

WHEREFORE, Mrs. Hendrickson respectfully MOVES the Court to cancel the hearing scheduled for September 8, order the Probation Department to immediately discharge Mrs. Hendrickson from custody, vacate her conviction and grant such other relief and remediation to Mrs. Hendrickson as seems proper under the circumstances.

Respectfully submitted,

Dated: September 7, 2017

*[signature]*

Doreen M. Hendrickson, *in propria persona*
232 Oriole St.
Commerce Twp., MI 48382
(248) 366-6858
doreen@losthorizons.com

**EXHIBIT 1**

## Excerpt from an argument that amended returns should be required titled: Amended Returns – Imposing a Duty to Correct Material Mistakes

By Calvin Johnson, Andrews & Kurth Centennial Prof. of Law, University of Texas, Austin School of Law and T. Keith Fogg, Villanova University School of Law, September 8, 2008

I. Current Law

A. Internal Revenue Code

The Internal Revenue Code does not require a taxpayer to file an amended return to correct a mistake discovered after the filing of the original tax return.[2] The words "amended return" scarcely appear in the code.[3] Reg. sections 1.451-1(a) and 1.461-1(a) provide that a taxpayer "should" file an amended return when the taxpayer ascertains an error on a prior tax return, and pay any additional tax due within the period of limitations.[4] IRS Publication 17, Your Federal Income Tax, has long said that you should correct your return if, after you have filed it, you find that "you did not report some income, [or] you claimed deductions or credits you should not have claimed." The publication states that you should "use Form 1040X, Amended U.S. Individual Income Tax Return, to correct a return you have already filed."

In Broadhead v. Commissioner, the Tax Court held that Treasury regulations do not require a taxpayer to file an amended return, even after being advised to do so by an accountant.[5] In Broadhead, the taxpayer's accountant advised the taxpayer that his closing inventory accounts were in error under accounting principles after the filing of the taxpayer's original income tax return.[6] The IRS argued that Broadhead "willfully and deliberately attempted to evade and defeat his income taxes when he refused to file the amended return after being advised to do so by his accountant."[7] The Tax Court held that the taxpayer "was not required by statute to file an amended return, and if one had been tendered for filing, [the IRS] could have declined to accept it."[8] In Badaracco v. Commissioner, the Supreme Court implicitly accepted Broadhead, saying that "the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace."[9]

An amended return, Form 1040X, does not generally affect the status of the original return. The filing of an amended return does not change the statute of limitations that began to run with the original return.[10] In Kaltreider Construction Co. v. United States, the corporate taxpayer had filed an amended return and paid the additional tax shown due on the amended return within the original return's three-year statute of limitations.[11] However, more than two years after payment of the additional tax, the corporation filed a claim for refund shortly after a court ruled that the additional tax should have been paid by the individual owners of the corporation and not the corporation itself.[12] Rejecting the taxpayer's argument that the three-year period of limitations should begin to run from the time the amended return was filed, the Third Circuit Court of Appeals found that the claim for refund was not timely filed, stating, "the statute of limitations begins to run from the date the original return was filed, and the filing of the amended return does not operate to extend the statute."[13] There is a limited exception under section 6501(c)(7) in which an amended return will extend the statute of limitations: If the IRS receives a written document showing an additional tax due, signed by the taxpayer, within 60 days before the expiration of the statute of limitations, the period for assessment of the additional amount shall not expire for 60 days after the date of receipt of such document.

Similarly, if the taxpayer had filed a fraudulent original return, the filing of an accurate amended return does not change the fraudulent nature of the original. In Badaracco, the Supreme Court held that the

1

section 6501(c)(1) exception applies when a taxpayer files a false or fraudulent return and then later files a non-fraudulent amended return, allowing the assessment of additional taxes "at any time," even after three years have passed.[14] The code prescribes penalties for taxpayers and return preparers that understate tax liability. Treasury regulations provide that accuracy-related provisions apply to additional tax shown on amended returns.[15] Under section 6662, a taxpayer faces a penalty of 20 percent of the portion of underpayment that is attributable to negligence or disregard of rules or regulations or any substantial understatement of tax.[16] Negligence in this instance is defined to include "any failure to make a reasonable attempt to comply" with the code provisions, and disregard includes any "careless, reckless or intentional disregard." [17] A substantial understatement of income tax is defined as the greater of 10 percent of the tax required to be shown on the return or $5,000 ($10,000 for corporations). [18]

The tax return preparer is also subject to penalties for understatement of tax.[19] In 2007 Congress increased the penalty amounts on tax return preparers[20] and raised the standards of conduct to avoid the return preparer penalty. To avoid a penalty after the 2007 amendments, the tax return preparer must have a reasonable belief that the position was more likely than not to be sustained on its merits if the position is not adequately disclosed on the tax return.[21] If the position is adequately disclosed, it needs only to have a reasonable basis.[22] A position meets the more likely than not standard if it has a greater than 50 percent likelihood of being upheld.[23] The reasonableness and likelihood of a position may be established by authorities described in reg. section 1.6662-4(d)(3)(ii).[24] Proposed amendments to the Circular 230 standards would incorporate the new more likely than not and reasonable basis standards as the minimum standards of professional conduct for practice before the IRS.[25] Section 6651(a) imposes civil penalties of 5 percent of the tax due for each month the failure to file a return continues, up to 25 percent in the aggregate.[26] If the failure to file is shown to be due to fraud, the civil penalty can be up to 75 percent of the tax shown on the return.[27] Section 7203 provides that a failure to file a return is a misdemeanor, subject to up to a $25,000 ($100,000 for a corporation) fine and one year's imprisonment. The civil and criminal penalty provisions for failure to file a tax return do not apply to amended returns.

[1]Prior scholarly commentary supporting the amended return includes Kenneth L. Harris, "Requiring the Correction of Error Under the Federal Tax Law," 42 Tax Law. 515, 536 (1989) (concluding that an amended return is within a taxpayer's duty to file a true and amended return, and finding no administrative difficulties); Judson Temple, "Rethinking Imposition of a Legal Duty to Correct Material Tax Return Errors," 76 Neb. L. Rev. 223 (1997) (failure to require amended returns is a "lingering oddity" of procedure).

[2]The term "amended return" refers to a return filed after an original return has been filed for a taxable period and after the due date, including extensions, for the original return. That an amended return is filed after the due date of the return distinguishes it from a "superseding return," which will be defined and discussed below.

[3]The three places in the code that the words "amended returns" appear are in section 965(b)(2) (exception to amounts to be included for the temporary dividends received deduction) and in the descriptive headings of section 6501(c)(7) (exception to the statute of limitations on assessment) and section 6662A(e)(3) rule with respect to the imposition of the accuracy-related penalty on understatements). Sections 6501(c)(7) and 6662A(e)(3) are discussed further below.

[4]Reg. section 1.451-1(a) provides that "if a taxpayer ascertains that an item should have been included in gross income in a prior taxable year, he should, if within the period of limitation, file an amended return and pay any additional tax due." Under reg. section 1.461-1(a), "if a taxpayer ascertains that a

2

liability was improperly taken into account in a prior taxable year, the taxpayer should, if within the period of limitation, file an amended return and pay any additional tax due."

[5]Broadhead v. Commissioner, 14 T.C.M. (CCH) 1284 (1955).

[6]Id.

[7]Id.

[8]Id.

[9]Badaracco v. Commissioner, 464 U.S. 386, 393 (1984).

[10]Michael Saltzman, IRS Practice and Procedure, para. 5.02[2][b], RIA (revised 2d ed. 2002) (citing Kaltreider Construction Co. v. United States, 303 F.2d 366 (3d Cir.), cert. denied, 371 U.S. 877 (1962)).

[11]Kaltreider Construction Co., 303 F.2d at 367.

[12]Id.

[13]Id. at 368 (quoting 10 Mertens, Federal Income Taxation section 57.15).

[14]Saltzman, (quoting Badaracco, 464 U.S. at 393).

[15]Reg. section 1.6664-2(c)(2) and (3).

[16]Section 6662(a) and (b). The substantial understatement of tax can arise from an understatement of income tax, a substantial valuation misstatement, a substantial overstatement of pension liabilities, or a substantial estate or gift tax valuation understatement. Section 6662(b)(2) through (5).

[17]Section 6662(c).

[18]Section 6662(d).

[19]Section 6694.

[20]Section 6694(a) and (b); Notice 2007-5, 2007-3 IRB 269, Doc 2006-25337, 2006 TNT 245-6; Circular 230 section 10.34. Section 8246 of the Small Business and Work Opportunity Tax Act of 2007, P.L. 110-28, 121 Stat. 190, amended several code provisions related to the tax return preparer penalty. The 2007 act increased the section 6694(a) penalty from $250 to the greater of $1,000 or 50 percent of the tax return preparer's income from the tax return preparation service. The section 6694(b) penalty for willful and reckless conduct was increased from $1,000 to the greater of $5,000 or 50 percent of the income from the tax preparation service.

[21]Section 6694(a)(2)(A) through (C)(i).

[22]Section 6694(a)(2)(C)(ii).

[23]Reg. section 1.6662-4(d)(2).

3

[24]Notice 2007-5; Circular 230 section 10.34.

[25]Proposed Treasury amendments to Circular 230, 31 CFR section 10.34(a) and (e), by reference to section 1.6662-4. In addition to the proposed regulations under Circular 230 there are also proposed regulations under sections 6694 and 6695, see 73 Fed. Reg. 34,560 (proposed June 17, 2008) (to be codified at 26 C.F.R. pts 1, 20, 25, et al.)

[26]Section 6651(a).

[27]Section 6651(f).

## CERTIFICATE OF SERVICE

I hereby certify that this day a true and correct copy of the foregoing MOTION was served via U.S. first-class mail upon the following counsel:

>Melissa Siskind
>U.S. Department of Justice
>Tax Division
>P. O. Box 972, Ben Franklin Station
>Washington DC, 20044

Dated: 9/07/17

Doreen M. Hendrickson